2024 IL App (1st) 240737-U

FIFTH DIVISION
June 7, 2024

No. 1-24-0737B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 MC 1101862 |
| | ) | |
| WILLIAM JOHNSON, JR., | ) | Honorable |
| | ) | William Fahy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**O R D E R**

¶ 1     *Held*:  The circuit court's order granting the State's petition for pretrial detention is affirmed. It was not an abuse of discretion to conclude that no conditions would mitigate the real and present threat to the safety of individuals or the community that would result from defendant's pretrial release.

¶ 2     Defendant William Johnson, Jr. appeals from the circuit court's order detaining him before trial, under the dangerousness standard set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial

Fairness Act. Mr. Johnson argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat posed by his release. For the reasons that follow, we affirm the court's order of detention.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Johnson stands charged with aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1) (West 2022)), a detainable offense (see 725 ILCS 5/110-6.1(a)(1), (6)(O) (West 2022)), as well as possession of a firearm with a revoked firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022)), and possession of a controlled substance (Xanax) (720 ILCS 570/402(c) (West 2022).

¶ 5      On March 21, 2024, the State petitioned for Mr. Johnson to be detained until trial pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State represented in its petition that Mr. Johnson "was on the streets of Chicago in possession of a Taurus semi-automatic handgun with one round in the chamber and a loaded magazine," the firearm "was uncased and immediately accessible," and Mr. Johnson had "a revoked FOID [card] and no [concealed carry license] CCL." The State argued that Mr. Johnson posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case and that there was no condition or combination of conditions in section 10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) that could mitigate that risk.

¶ 6      Mr. Johnson was present and represented by counsel at the March 21, 2024, hearing on the State's petition for pretrial detention. The State proffered that at 8:17 p.m. on March 20, 2024, officers responding to a suspected auto theft in progress at 5200 South Ellis Avenue were canvasing the area for a Black or Hispanic male when they observed Mr. Johnson, who had a light complexion and appeared Hispanic, walking quickly and looking behind him. When the officers

attempted to conduct an investigatory stop, Mr. Johnson fled on foot. They caught up to him and conducted an emergency takedown in a residential yard. During the ensuing struggle, Mr. Johnson pulled out a black handgun and held it over his head. The officers recovered the weapon, a Taurus 9mm semiautomatic pistol, and observed that it was fully loaded with a round in the chamber. A database search revealed that Mr. Johnson had a revoked FOID card, and he was placed under arrest. A custodial search uncovered one clear plastic bag containing 11 white rectangular pills and 6 blue pills, both suspected to be Xanax.

¶ 7    The State noted that Mr. Johnson had two prior misdemeanor charges. He had been charged with AUUW in both 2020 and 2022, and those charges were reduced, respectively, to misdemeanor unlawful possession of a blackjack, for which Mr. Johnson was sentenced to probation, and misdemeanor possession of a weapon, for which he served two days in custody.

¶ 8    The State acknowledged that Mr. Johnson had only two misdemeanor convictions on his record but argued that his behavior was escalating. He had been charged with felony firearm offenses twice before and those charges were reduced to misdemeanors, but that leniency had had no effect. He was before the court again, and this time "with a loaded firearm in a residential neighborhood." The State argued that "[t]his certainly could have been a very dangerous situation," with Mr. Johnson producing a loaded weapon just as officers were trying to place him into custody, and "[t]here could have been people out on the street," as it was just after 8 p.m.

¶ 9    Pretrial Services reported that Mr. Johnson had a "new criminal activity" score of 2 and a "failure to appear" score of 2, which it suggested "coincides with pretrial monitoring."

¶ 10    Defense counsel argued that the State's proffer was insufficient for the court to conclude that the dangerousness prong of section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) had been met. Counsel emphasized that Mr. Johnson had no history of violent behavior. He

was engaged, he and his fiancée had recently purchased a condo and were expecting a child, and he had low pretrial services scores. Counsel noted that his scores might be even lower, because the Pretrial Services report incorrectly stated that he had a prior felony, when both of his prior convictions were for misdemeanors. The court interjected at this point to say, "I don't know how it could get lower. *** It is already a two and a two."

¶ 11    If the court did find that the dangerousness prong of the statute was met, defense counsel argued that there were conditions of release that could mitigate that threat. She pointed out that Mr. Johnson had no history of violating conditions of release and Pretrial Services had recommended electronic monitoring. Counsel noted that Mr. Johnson was involved in his community and church. He had graduated from high school and college, with degrees in computer science, and had worked for two years as an IT analyst for the Chicago Mercantile Exchange.

¶ 12    After considering these arguments, the circuit court concluded that the State had proved by clear and convincing evidence that Mr. Johnson posed a real and present threat to the safety of others if he were granted pretrial release. "I am going to start with the nature and circumstances of this particular offense," the court said. The court then addressed Mr. Johnson directly, noting that he had run from law enforcement with a loaded firearm and saying "[t]hat by itself creates a very dangerous situation for you, for law enforcement, for everyone else who was out on that public way shortly after 8:00 o'clock." The court continued, saying "to make matters much worse when law enforcement finally catches you and there is a struggle you decide to pull a firearm while you're struggling with law enforcement. That is about as dangerous as it gets short of shots being fired." The court noted that Mr. Johnson had a history of illegal gun possession, was also found with a controlled substance, and had put himself and others in a very dangerous situation.

¶ 13    The court then considered defense counsel's request for pretrial release with conditions.

4

The court noted that counsel was "absolutely right," Mr. Johnson's Pretrial Services scores were low, and "[t]he mitigation [was] fairly substantial here." Mr. Johnson had graduated from high school, earned an associate's degree and a bachelor's degree, was working as an IT analyst, and had people who were present in court to support him. The court had to balance that, however, "with the nature and circumstances of this offense" and with Mr. Johnson's criminal history. Mr. Johnson had "pulled a gun while law enforcement was trying to detain him" and they "had to grab that gun and remove it from his hands." The court specifically considered release with electronic monitoring but noted that it was "far from fail safe" and "certainly [would] not prevent this defendant from possessing firearms or committing dangerous acts with firearms." The court ordered Mr. Johnson detained pending trial, explaining to him that another judge would soon "be presented with this same issue" and might decide instead to release him with conditions.

¶ 14    The court entered a pretrial detention order consistent with the findings made on the record, and Mr. Johnson now appeals.

¶ 15                                II. JURISDICTION

¶ 16    The circuit court entered its order granting the State's petition for pretrial detention on March 21, 2024, and Mr. Johnson filed a timely notice of appeal from that order on April 3, 2024. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 17                                III. ANALYSIS

¶ 18    Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief here, the State needed

to prove by clear and convincing evidence (1) that "the proof [was] evident or the presumption great" that the Mr. Johnson committed a qualifying offense, (2) that Mr. Johnson "pose[d] a real and present threat to the safety of any person or persons or the community" (the dangerousness standard), and (3) that "no condition or combination of conditions" set forth in section 110-6.1(b) of the Code could mitigate either that safety risk or "the defendant's willful flight." *Id.* § 110-6.1(e)(1)-(3).

¶ 19    "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a pretrial detention] hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 20    Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We have concluded that our review of such orders is twofold. We review the circuit court's factual findings under the manifest-weight-of-the-evidence standard. *See In re C.N.*, 196 Ill. 2d 181, 208 (2001) (applying a similar standard of review for the requirement of clear and convincing evidence by the State in termination-of-parental rights proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17.

¶ 21    As to the court's decision regarding whether there are any conditions of release that could mitigate such risks, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance

a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 22    Here, Mr. Johnson has elected to stand on his notice of appeal rather than file a memorandum in support of his arguments, as he is permitted to do under Rule 604(h)(2) (eff. Dec. 7, 2023). He does not challenge the circuit court's finding that the proof is evident or the presumption great that he committed a qualifying offense or its finding that his pretrial release would pose a real and present threat to the safety of the community. Mr. Johnson argues only that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate that threat.

¶ 23    When considering what conditions of pretrial release might reasonably ensure the community's safety, the circuit court considers a number of factors, including the "nature and circumstances of the offense charged," the "weight of the evidence against the defendant," the "history and characteristics of the defendant," and the "nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release." 725 ILCS 5/110-5(a)(1)-(4) (West 2022). The court must consider "not just whether conditions short of detention exist, but also whether a defendant is likely to *comply* with them." (Emphasis in original.) *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 13.

7

¶ 24    Here, Mr. Johnson had no other pending cases and was not on parole when the charged offenses occurred. Pretrial Services recommended he be released on electronic monitoring, based on his low "new criminal activity" and "failure to appear" scores of 2. And his counsel also presented significant mitigation demonstrating that he "had a record of stability and ability to comply with orders, including those given by the court." He successfully completed 18 months of probation in 2017, for example.

¶ 25    Mr. Johnson does not contend that the circuit court failed to consider any of this. Indeed, the court took care to acknowledge each of these points. It ultimately agreed with the State, however, the specific circumstances of this offense suggested that Mr. Johnson's conduct had escalated; he had progressed from mere possession to carrying a loaded semiautomatic weapon in a residential neighborhood and pulling that weapon while police struggled to detain him. As the circuit court acknowledged, different judges could reach different conclusions here. Where that is the case, we will not substitute our judgment for that of the circuit court. See *In re Adoption of D.*, 317 Ill. App. 3d 155, 160 (2000) ("The trial court cannot be said to have abused its discretion if reasonable persons could differ as to its decision.").

¶ 26    Given the totality of the circumstances, we cannot conclude that no reasonable person would agree with the circuit court that neither electronic monitoring nor any other condition or combination of conditions could reasonably mitigate the threat posed to the community by Mr. Johnson's pretrial release. While we find no abuse of discretion, we agree with the circuit court that this was a close case and echo the suggestion made by that court that another judge might exercise his or her discretion, based on Mr. Johnson's record and the State's proffer, to conclude that pretrial detention was not necessary in this case.

¶ 27                                VI. CONCLUSION

¶ 28    For the above reasons, we affirm the circuit court's orders granting the State's petitions

for pretrial detention.

¶ 29    Affirmed.